# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**MOISES EUFELIO MARTINEZ, JR.,**

    Movant/Defendant,

v.                                                          No. 18-cv-0880 KG/SMV
                                                                   No. 17-cr-1643 KG

**UNITED STATES OF AMERICA,**

    Respondent.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION TO DENY PETITIONER'S MOTION UNDER § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

THIS MATTER is before the Court on Petitioner's Motion Under § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 1],[1] filed on September 18, 2018. The United States responded on August 8, 2019. [Doc. 6]. Petitioner replied on September 10, 2019. [Doc. 10]. The Honorable Kenneth J. Gonzales, United States District Judge, referred this matter to me for analysis and a recommended disposition. [Doc. 9]. I have considered the briefing, the relevant portions of the record in this case and the criminal case, and the relevant law. Being otherwise fully advised in the premises, I recommend that Petitioner's Motion be DENIED.

### I.     BACKGROUND

In February of 2016, the Lea County Drug Task Force ("LCDTF") received information from a confidential source indicating that Petitioner sold "large quantities of" methamphetamine from his recreational vehicle ("RV") in Hobbs, New Mexico. [Doc. 7] at 3 (Presentence Report).

---

[1] Unless otherwise indicated, a citation to the record refers to documents in Petitioner's civil case, not the underlying criminal case.

On February 19, 2016, LCDTF agents executed a search warrant for the RV, finding 270.5 grams of a substance testing positive for methamphetamine, in addition to two digital scales and two firearms. *Id.*

At the direction of LCDTF agents, on or about December 19, 2016, the confidential source called Petitioner to arrange for a sale of methamphetamine valued at $600. [Doc. 6-3] at 5. During this call, Petitioner told the confidential source that "he was currently staying at the Black Gold Casino [hotel] and had just gotten a room there." [Doc. 6-3] at 6. They agreed to meet at a Walmart parking lot to complete the deal. *Id.* at 5.

Agents drove to the hotel and observed Petitioner get into his car in the hotel parking lot. *Id.* at 6. They followed him to the Walmart parking lot and, as Petitioner attempted to complete the sale of drugs to the confidential source, detained him. *Id.* A search revealed that he had a .22 caliber North American Arms pistol in his front left pants pocket and 67 grams of methamphetamine. [Doc. 6-3] at 6; [Doc. 7] at 4. When searching him, they also found both two keys for Room 522 at the hotel and breakfast vouchers for the hotel. [Doc. 6-4] at 7; [Doc. 7] at 4. The agents then obtained a search warrant for Room 522 at the Black Gold Casino hotel, finding an additional 564 grams of a substance testing positive for methamphetamine in the hotel room's safe. [Doc. 7] at 4. Petitioner claims that the methamphetamine in Room 522 belonged to a woman named Anita or Annette, not him. *Id.*; [Doc. 1] at 17.

Police arrested Petitioner on January 5, 2017. [Doc. 7] at 1. The government charged him with possession with an intent to distribute 50 grams or more of a substance containing a detectable amount of methamphetamine and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2. *Id.*

2

## II. PROCEDURAL HISTORY

On June 22, 2017, the Honorable Carmen Garza, Chief United States Magistrate Judge, held a change-of-plea hearing. [Doc. 6-1]. Petitioner stated that he discussed the terms of the plea agreement with his lawyer, Dennis Candelaria. *Id.* at 6. When Judge Garza asked him if he was "satisfied with [Candelaria's] advice and his representation," Petitioner replied, "Yes, ma'am." *Id.* Petitioner pleaded guilty to each of his charges. [CR Doc. 27]. In the plea agreement, the United States asserted that Petitioner was entitled to a one-level base-offense-level reduction for acceptance of responsibility. *Id.* at 4–5. The United States requested that the Court increase his base offense level by two levels for possessing a firearm. *Id.* at 5. By pleading guilty, Petitioner waived his right to appeal the conviction and sentence, including his right to bring any collateral attack but for a claim of ineffective assistance of counsel. *Id.* at 6. The United States agreed not to bring additional criminal charges arising out of the execution of the search warrants at Petitioner's RV and the hotel room. *See id.*

After the change-of-plea hearing, the United States Probation Office ("USPO") prepared the Presentence Report, which calculated Petitioner's base offense level at 30. [Doc. 7] at 5. The USPO arrived at this base offense level by including all 901.5 grams of methamphetamine associated with Petitioner as relevant conduct: the 270.5 grams found in his RV, the 67 grams found on his person when detained, and the 564 grams found in the hotel room. *See id.* Petitioner received a two-level enhancement of his base offense level for possessing a firearm and a two-level enhancement of his base offense level for maintaining a place—the RV—for the purpose of distributing a controlled substance. *Id.* Petitioner also received a three-level reduction of his base offense level for acceptance of responsibility. *Id.* In total, Petitioner received a base offense level

of 31, which, coupled with his criminal history, yielded a guideline range of 135–168 months in prison. *Id.* at 5, 14.

In response to the Presentence Report, Petitioner moved for an additional two-level reduction of his base offense level on the ground that he played only a minor role in the offense because he acted as a "go-between" when moving drugs from the woman named Anita or Annette at the hotel to the buyer. [CR Doc. 31] at 2–3. The United States conceded this reduction. [CR Doc. 34] at 2. This reduction decreased Petitioner's base offense level to 29, yielding a guideline range of 108–135 months in prison. [Doc. 6-2] at 3–4. Petitioner also moved for a variance based on family circumstances. [CR Doc. 31] at 3–5. The Court rejected his request for a variance and imposed a sentence of 108 months' incarceration (the low end of the guideline range) and a supervised release period of four years. [CR Docs. 35, 36].

Petitioner appealed on November 3, 2017, but the Tenth Circuit enforced the waiver of appeal in his plea agreement, dismissing his appeal on December 27, 2017. *United States v. Moises Eufelio Martinez, Jr.*, Case No. 17-2191, [Doc. 01019921245]. He filed the instant Motion to Vacate on September 18, 2018. [Doc. 1]. He requests that the Court vacate his sentence and resentence him to a term of 70 months in prison. *Id.* at 12, 19.

### III. LEGAL STANDARD

A district court may grant relief under § 2255 if it determines "that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b) (2018). Pro se pleadings are interpreted liberally but must comply with the basic requirements of the Federal Rules of Civil Procedure, and

4

a district court cannot rewrite a habeas petition to include claims never properly presented. *United States v. Harris*, 579 F. App'x 657, 661–62 (10th Cir. 2014).

## IV. ANALYSIS

Petitioner requests habeas relief based on ineffective assistance of counsel for three reasons. The first two reasons relate to Candelaria's performance at the sentencing stage of his case. First, he argues that Candelaria unreasonably failed to object to the sentencing enhancement based on his use of the RV as a place for distributing controlled substances. [Doc. 1] at 16. Second, he argues that Candelaria unreasonably failed to object to the use of, or request an evidentiary hearing to determine ownership of, the 564 grams of methamphetamine found at the hotel room that the district court used to calculate his base offense level. *Id.* at 17. Finally, Petitioner asserts that Candelaria's performance at the plea-bargaining stage of his case was deficient. *See id.* at 4, 14. Petitioner requests an evidentiary hearing. *Id.* at 19.

The Sixth Amendment guarantees the right to effective assistance of counsel. *Dyer v. Crisp*, 613 F.2d 275, 278 (10th Cir. 1980). In order to prevail on a claim for ineffective assistance of counsel, Petitioner must satisfy two elements. First, he must show that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, he must show that his counsel's deficient performance prejudiced him. *Id.* Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

I recommend rejection of Petitioner's challenges to Candelaria's performance because Petitioner cannot show that Candelaria's allegedly deficient performance prejudiced him.

5

A.   **Even if Candelaria performed deficiently by failing to object to the sentencing enhancement based on the RV and the base level offense calculated using the hotel methamphetamine, Petitioner fails to meet his burden to show that these actions prejudiced him.**

1.   **Petitioner fails to show that Candelaria's failure to object to the enhancement based on his maintaining the RV as a place to distribute controlled substances prejudiced him because he does not explain how the RV's alleged status as his home precludes an application of this enhancement.**

Petitioner fails to show how Candelaria's failure to present evidence that he used his RV as his home prejudiced him. Petitioner simply argues that his RV "was in fact [his] home and place of residence." [Doc. 1] at 16. He does not argue how the RV's alleged status as his home prevents a finding that it met the enhancement requirements of § 2D1.1(b)(12). As the United States maintains, a residence can simultaneously be a place of dwelling and satisfy this sentencing enhancement. *United States v. Murphy*, 901 F.3d 1185, 1190–91 (10th Cir. 2018) (collecting cases). When determining whether a specific home meets this enhancement, the Sentencing Guidelines "do[] not require a comparison of the frequency of lawful and unlawful activity at the premises." *Id.* at 1191. Rather, courts must look to the totality of the circumstances, including:

> (1) the frequency and number of drugs sales occurring at the home; (2) the quantities of drugs bought, sold, manufactured, or stored in the home; (3) whether drug proceeds, employees, customers, and tools of the drug trade (firearms, digital scales, laboratory equipment, and packaging materials) are present in the home[;] and (4) the significance of the premises to the drug venture.

*Id.* at 1191–92.

Here, balancing the above factors, I recommend finding that Petitioner has not shown a reasonable probability that contesting this enhancement would have changed the outcome because this enhancement applied to him. Though the exact number of drug sales is unclear, the confidential source told agents that Petitioner would "visit[] the RV to sell Methamphetamine in

large amounts." [Doc. 6-5] at 5. Petitioner stored significant amounts of methamphetamine—at least 270.5 grams of it—at the RV. [Doc. 7] at 4. The record establishes that agents recovered multiple tools of the drug trade at the RV, including two firearms and two digital scales. *Id.* Though the record lacks specific testimony about how significantly the RV contributed to Petitioner's drug venture, because Petitioner stored substantial amounts of methamphetamine and related tools at the RV, it clearly played at least some helpful role in the venture. Therefore, though no evidence establishes the number of sales at the RV, based on the large amount of drugs and tools discovered in the RV, the RV qualifies as a place maintained for the purpose of distributing a controlled substance. As the enhancement applies to Petitioner, he suffered no prejudice from Candelaria's failure to object to its inclusion in the Presentence Report.

Crucially, in both his Motion and Reply, Petitioner ignores *Murphy*'s multi-factor test to determine whether a home meets this enhancement. For this reason alone, he fails to meet his burden to show that a reasonable probability existed that, had Candelaria raised this issue, he would have received a different sentence. Therefore, I recommend finding that he has not shown that he suffered prejudice from Candelaria's allegedly deficient performance.

    **2.**    **Petitioner fails to show that Candelaria's failure to contest his connection to the hotel methamphetamine prejudiced him because the district court properly included the hotel methamphetamine in his base offense level as relevant conduct.**

"The government bears the burden of proving, by a preponderance of the evidence, the quantities of each drug attributable to each defendant." *United States v. Torres*, 53 F.3d 1129, 1144 (10th Cir. 1995). When determining a sentencing range, the sentencing guidelines require a court to include as relevant conduct "all acts and omissions committed, aided, abetted, counseled,

7

commanded, induced, procured, or willfully caused by the defendant." U.S. Sentencing Guidelines Manual § 1B1.3(a)(1). "Drug quantities associated with illegal conduct for which a defendant was not convicted are to be accounted for in sentencing, if they are part of the same conduct for which the defendant was convicted." *United States v. Washington*, 11 F.3d 1510, 1516 (10th Cir. 1993). "With respect to offenses involving contraband (including controlled substances), the defendant is accountable under subsection (a)(1)(A) for all quantities of contraband with which he was directly involved . . . ." U.S. Sentencing Guidelines Manual § 1B1.3 cmt. 3(D). The Tenth Circuit "has construed broadly the meaning of relevant conduct." *United States v. Asch*, 207 F.3d 1238, 1243 (10th Cir. 2000).

Petitioner has not shown that he suffered prejudice from Candelaria's failure to contest his connection to the hotel methamphetamine because, even if Candelaria contested this connection, the district court would have included this methamphetamine as relevant conduct when calculating his base offense level. Even under Petitioner's version of events, he went to the hotel room for the purpose of obtaining drugs to sell to a buyer. [Doc. 7] at 4. According to Petitioner, after the woman named Anita or Anette brought the methamphetamine to the hotel room, she "gave the drugs to [Petitioner's friend] Tommy and Tommy gave them to [Petitioner] to sell." *Id.* Based on these facts alone, and broadly construing the meaning of relevant conduct, Petitioner was "directly involved" with the hotel methamphetamine; it was the source from which he received the methamphetamine that he attempted to sell and the purpose of his stay at the hotel.

Additionally, numerous other facts connected Petitioner to the hotel methamphetamine. Not only did he tell the confidential source that he was staying at the hotel, but agents found two keys for Room 522 and breakfast vouchers for the hotel upon searching him. [Doc. 6-3] at 5–6;

8

[Doc. 6-4] at 7; [Doc. 7] at 4. Agents witnessed Petitioner get into his car at the hotel's parking lot immediately before meeting the confidential source. [Doc. 6-3] at 6. When authorities searched Room 522, they found 564 grams of the same controlled substance that Petitioner attempted to sell to the confidential source. *See* [Doc. 7] at 12. Though Petitioner asserts that he had no connection to this methamphetamine, [Doc. 1] at 17, such an assertion does not outweigh the significant circumstantial evidence directly linking him to the hotel methamphetamine. Therefore, the totality of the circumstances indicates that the district court properly included the hotel methamphetamine when calculating Petitioner's base offense level as relevant conduct. I thus recommend finding that Petitioner fails to show that a reasonable probability existed that he would have received a lesser sentence had Candelaria contested his connection to the hotel methamphetamine.

Petitioner makes arguments suggesting that the search of the hotel room was improper, presumably believing that Candelaria should have raised these arguments. The Court rejects each of them. He claims that he was not present while authorities searched the hotel room, [Doc. 1] at 17, but an occupant has no absolute right to be present when police search property pursuant to a valid warrant, *see United States v. Chubbuck*, 32 F.3d 1458, 1460–61 (10th Cir. 1994). He asserts that the police had no warrant to search the hotel room, [Doc. 1] at 17, but the United States attaches a copy of the warrant to its Response, *see* [Doc. 6-4] at 1–8. Finally, he argues that because he allegedly did not personally rent the hotel room, Candelaria should have requested an evidentiary hearing to determine who owned the methamphetamine. [Doc. 1] at 17–18. Yet, for the reasons explained above, I recommend finding that the district court would have included the

hotel methamphetamine in his base offense level as relevant conduct even if he did not personally rent the hotel room and even if Candelaria requested an evidentiary hearing.[2]

**B.    Petitioner is entitled to no relief under § 2255 related to his guilty plea because he offers no argument explaining how Candelaria's performance during the plea-bargaining stage was deficient or how this performance prejudiced him.**

Petitioner asserts that his "Sixth Amendment [right] was violated with ineffective assistance of counsel during the plea[-]bargaining phase of the proceedings." [Doc. 1] at 14. Though he cites many cases holding, among other things, that an ineffective-assistance-of-counsel claim *can* arise at the plea-bargaining stage, he never explains what actions Candelaria took or failed to take that resulted in a constitutionally deficient plea. Nor does he explain how Candelaria's allegedly deficient performance prejudiced him. For these reasons, I recommend rejecting his § 2255 challenge to Candelaria's performance at the plea-bargaining stage.

---

[2] Petitioner argues that, under *Apprendi v. New Jersey*, 500 U.S. 466 (2000) and *Alleyne v. United States*, 570 U.S. 99 (2013), the government must prove beyond a reasonable doubt any fact that increases the sentence of a defendant. [Doc. 1] at 18; [Doc. 10] at 3–4, 7. He appears to reason that, because Candelaria did not object to the use of the RV methamphetamine or the hotel methamphetamine, and a jury did not find beyond a reasonable doubt that he controlled or possessed this methamphetamine, Candelaria's actions improperly caused his sentence to increase. *See id.* at 18–19. Petitioner mischaracterizes *Apprendi* and *Alleyne*. "*Apprendi* . . . does not apply to sentencing factors that increase a defendant's guideline range but do not increase [the sentence beyond the] statutory maximum." *United States v. Mendez-Zamora*, 296 F.3d 1013, 1020 (10th Cir. 2002) (alteration in original) (quoting *United States v. Sullivan*, 255 F.3d 1256, 1265 (10th Cir. 2001)). Because the statutory maximum for Petitioner's offense is 40 years in prison, 21 U.S.C. § 841(b)(1)(B) (2018), and he received 108 months (or 9 years) in prison, [CR Docs. 35, 36], the failure of a jury to find beyond a reasonable doubt that he owned, controlled, or possessed this methamphetamine does not run afoul of *Apprendi*. Nor did the enhancement related to the RV methamphetamine or the base-offense-level calculation related to the hotel methamphetamine increase the mandatory minimum sentence that Petitioner received. *See* § 841(b)(1)(B); *United States v. Zar*, 790 F.3d 1036, 1054–55 (10th Cir. 2015) ("The defendants' reliance on *Apprendi* and *Alleyne* is misplaced as none of the defendants were subject to mandatory minimum sentences or sentenced beyond the statutory maximums for their convictions. Instead, the judicial fact finding the defendants complain of occurred in the context of determining their applicable sentencing ranges under the advisory sentencing Guidelines. The *Apprendi/Alleyne* rule does not apply in that context." (citations omitted)). Therefore, even had Candelaria raised an *Apprendi* or *Alleyne* challenge to the RV methamphetamine or the hotel methamphetamine, he would have failed.

## C. The Court will not hold an evidentiary hearing because the existing record conclusively shows that Petitioner is entitled to no relief.

"A petitioner for habeas relief is entitled to an evidentiary hearing on a § 2255 motion '[u]nless the motion and the files and records of the case conclusively show that [he] is entitled to no relief.'" *United States v. Gallegos*, 459 F. App'x 714, 716 (10th Cir. 2012) (quoting 28 U.S.C. § 2255(b) (2012)). "A § 2255 petitioner is entitled to an evidentiary hearing when there is a disputed factual issue." *Id.* at 716–17. Yet, when the evidence permits the court to resolve the § 2255 motion on the existing record, the petitioner is not entitled to an evidentiary hearing. *United States v. Lopez*, 100 F.3d 113, 121 (10th Cir. 1996). The petitioner has the burden of establishing the necessity of an evidentiary hearing. *Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001).

I recommend finding that Petitioner is not entitled to an evidentiary hearing in this case because no relevant factual dispute exists, and because the existing record conclusively shows that he is entitled to no relief. As noted earlier, even assuming that Petitioner lived at his RV and did not use it solely for distributing controlled substances, such a finding does not preclude a two-level enhancement for maintaining the RV to manufacture or distribute a controlled substance. Moreover, as explained above, no relevant factual dispute exists over the methamphetamine in the hotel room. The issue is not whether Petitioner in fact owned or controlled that methamphetamine. Rather, the issue is whether Petitioner suffered prejudice from Candelaria's failure to object to his connection to the hotel methamphetamine or Candelaria's failure to request an evidentiary hearing to contest this connection. The existing record permits the Court to determine that Petitioner has not shown that Candelaria's failure to take either of these actions prejudiced him. I therefore

11

recommend finding that Petitioner fails to meet his burden to establish the necessity of an evidentiary hearing.

## V. CONCLUSION

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion Under § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 1] be **DENIED**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**